**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROCCO PERONACE,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No.: 25-cv-158** |
| | : | |
| **KINSALE INSURANCE CO.,** | : | |
| **Defendants.** | : | |

## MEMORANDUM

**SITARSKI, M.J.**                                                                                    **June 30, 2025**

This case arises out of a residential construction project at 8 Shepards Way in Glenside, Pennsylvania (the "Property"). Rocco Peronace ("Plaintiff"), owner of the Property, seeks to recover on a commercial general liability ("CGL") insurance contract (the "Policy") executed between Kinsale Insurance Company ("Defendant") and RPM Builders, LLC dba RPM Builders, LP ("RPM"), the general contractor on the project.

Presently pending before the Court are Defendant's Motion to Dismiss the Amended Complaint (Def.'s Mot. Dismiss Am. Compl., ECF No. 18), Defendant's Motion to Strike or Dismiss the Second Amended Complaint (Def.'s Mot. to Strike or Dismiss Second Am. Compl., ECF No. 22), Plaintiff's Memorandum of Law in Opposition to that motion (Pl.'s Mem. Opp'n, ECF No. 23), and Defendant's reply brief in further support of its motion (Def.'s Reply, ECF No. 24). For the reasons that follow, Defendant's Motion to Dismiss the Amended Complaint and to Strike the Second Amended Complaint shall be **GRANTED**.

## I.    BACKGROUND[1]

---

[1] As required at this stage of the proceeding, the Court must accept as true and view in the light most favorable to Plaintiff all allegations made in the complaint. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 249 (1989); *Rocks v. City of Phila.*, 868 F.2d

### A.    The Construction Project at the Property

Plaintiff contracted with RPM for the construction of a residence (the "House") at the Property (the "Contract").  (Am. Compl., ECF No. 10, at ¶¶ 3-8).  The timeframe of that project spanned from June 2020 through January 2024.  (*Id.*, Ex. B, at 100-03).  In September 2022, Plaintiff and RPM signed an addendum to the Contract agreeing that if the project was not completed by December 1, 2022, RPM agreed to assign its rights to any insurance policy covering the project to Plaintiff (the "Assignment").  (*Id.*, at ¶¶ 6-7, 13).  On February 1, 2024, RPM executed the Policy—a CGL insurance liability contract covering "property damage" related to the construction project that occurred at the Property—with Defendant.  (*Id.*, Ex. A, at 12-93).  The effective period of the Policy began on February 1, 2024, and ended on February 1, 2025.  (*Id.*).  Between January 2022 and February 2024, the House suffered damage that Plaintiff attributes to the faulty workmanship and delays of RPM and its subcontractors.  (*Id.* at ¶¶ 14-21).

The relevant timeline is as follows:

June 21, 2020:	Plaintiff gives RPM notice to proceed with construction of the House with a completion date of June 21, 2021.

Oct. 22, 2020:	The Contract is executed by Plaintiff and RPM.

June 3, 2021:	Building permits are granted and the project commences.

Jan. 15, 2022:	The partially-completed House is exposed to weather, resulting in damage due to alleged failure to install roofing and windows.

Sep. 12, 2022:	RPM requests four additional months to complete the project.

Sep. 15, 2022:	Plaintiff and RPM add an addendum to the Contract agreeing that "[i]f the

---

644, 645 (3d Cir.1989); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). However, this "requirement does not apply to legal conclusions."  *Kelley v. State Farm Fire & Cas. Co.*, No. 19-0626, 2019 WL 2425135, at *1 (E.D. Pa. June 10, 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 684 (2009)).

      project is not completed by December 1, 2022, Joe Flood[2] and RPM
      Builders agree[] to assign his/its rights to any insurance policy to Rocco
      and Breanne Peronace."

Dec. 1, 2022: The project is not completed by this date.

Jan. 4, 2023: RPM requests three additional months to complete the project.

Jan. 12, 2024: Date of substantial completion.

Feb. 1, 2024: RPM and Defendant execute a commercial general liability coverage
      insurance policy with a one-year effective period.

Feb. 7, 2024: Broken piping causes water damage to the home.

Sep. 30, 2024: After Plaintiff filed a lawsuit against RPM alleging breach of contract, the
      Court of Common Pleas of Philadelphia County enters judgment in favor
      of Plaintiff and against RPM in the amount of $688,650.

Oct. 15, 2024: Plaintiff demands payment under the Policy from Defendant.

Nov. 4, 2024: Defendant denies coverage under the Policy.

Feb. 1, 2025: The Policy period ends.

(*Id.*, Ex. A, at 12-93, Ex. B, at 95, 100-03; Compl., ECF No. 1-3, at ¶¶ 15-16).

### B. Procedural History

   Plaintiff filed a breach of contract claim in the Philadelphia Court of Common Pleas

against RPM seeking to recover damages based on the Contract, and on September 30, 2024, the

court entered judgment in favor of Plaintiff in the amount of $688,650. (Am. Compl., Ex. B,

ECF No. 10, at 95). Plaintiff then filed another complaint in that court on December 3, 2024 (the

"Complaint") asserting three counts against Defendant: (1) breach of contract; (2) bad faith in

violation of 42 Pa. C.S.A. § 8371; and (3) indemnification or contribution. (Compl., ECF No. 1-

3). Plaintiff alleged: the damages awarded to Plaintiff in the underlying suit stemmed from an

---

   [2] Flood, the principal representative of RPM, was an additional named defendant against
whom Plaintiff ultimately received the underlying judgment order. (Am. Compl., ECF No. 10, at
¶ 4).

occurrence that was covered under the terms of the Policy between Defendant and RPM; RPM had lawfully assigned its rights under the Policy to Plaintiff; Plaintiff had demanded payment for the claim related to the physical damage to the Property; upon information and belief, RPM had also submitted a claim under the Policy to cover the damages; Defendant denied liability under the Policy; and Plaintiff was entitled to indemnification or contribution from Defendant under the terms of the Policy. (*Id.* at ¶¶ 17-30). Plaintiff sought a declaration of rights under the Policy and for the state court to enter judgment in his favor in the amount of $688,650, along with costs and attorney's fees, interest, and punitive damages. (*Id.*).

Defendant removed the case to this Court on January 10, 2025. (Def.'s Notice of Removal, ECF No. 1). On January 17, 2025, Defendant filed a Motion to Dismiss Plaintiff's Complaint. (Def.'s Mot. Dismiss, ECF No. 8). On February 7, 2025, Plaintiff filed an Amended Complaint (Am. Compl., ECF No. 10), after which Defendant's initial Motion to Dismiss Plaintiff's Complaint was denied as moot on February 10, 2025. (Order, ECF No. 11). On February 19, 2025, the Honorable John Milton Younge referred the matter to me after the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c). (Order, ECF No. 16). Defendant filed a subsequent Motion to Dismiss Plaintiff's Amended Complaint (the "First Motion to Dismiss")[3] on February 21, 2025. (Def.'s Mot. Dismiss Am. Compl., ECF No. 18). Instead of responding to Defendant's First Motion to Dismiss and without seeking the consent of Defendant or leave from the Court, Plaintiff filed a Second Amended Complaint on March 7, 2025. (Second Am. Compl., ECF 21). Defendant filed a Motion to Strike or Dismiss the Second

---

[3] Though Defendant filed a prior motion to dismiss the initial Complaint in this case, for the purposes of this memorandum opinion I refer to Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Def.'s Mot. Dismiss Am. Compl., ECF No. 18) as the "First Motion to Dismiss," and its Motion to Strike or Dismiss Plaintiff's Second Amended Complaint (Def.'s Mot. to Strike or Dismiss Second Am. Compl., ECF No. 22) as the "Second Motion to Dismiss" or the "Motion to Strike."

Amended Complaint ("Second Motion to Dismiss" or "Motion to Strike") on March 21, 2025. (Def.'s Mot. to Strike or Dismiss Second Am. Compl., ECF No. 22). Plaintiff then filed a Memorandum of Law in Opposition to that motion on April 4, 2025, (Pl.'s Mem. Opp'n, ECF No. 23), and Defendant filed a reply brief in further support of its motion on April 11, 2025. (Def.'s Reply, ECF No. 24).

### C.    Plaintiff's Complaints

The gist of Plaintiff's allegations across his three complaints remains largely the same; his subsequent amendments[4] serve only to clarify certain facts, none of which are material to the final disposition of the pending motions. In sum, Plaintiff argues that the faulty workmanship, delays, and failure to complete certain work on the construction project by RPM and RPM's subcontractors led to unforeseeable, weather-related accidents that damaged the Property. (Compl., ECF No. 1-3, at ¶¶ 4-6, 8-9; Am. Compl., ECF No. 10, at ¶¶ 8, 14-21; Second Am. Compl., ECF No. 21, at ¶¶ 9, 14-27).

Plaintiff alleges that "the exposure of the partially completed residence to weather" resulted in significant damage to the House. (Am. Compl., ECF No. 10, at ¶ 18).[5] Moreover, "[t]his 'occurrence' of weather-related damage, exacerbated by the pre-existing construction defects (including those by subcontractors), took place during the policy period of the Kinsale

---

[4] Defendant notes that the only relevant addition to the Second Amended Complaint is the inclusion of paragraphs 17-22, which clarify that some of the alleged faulty workmanship and delay was attributable to RPM's subcontractors, and that the Policy covered this work. (*See* Def.'s Reply, ECF No. 24, at 5; Second Am. Compl., ECF No. 21, at ¶¶ 17-22).

[5] This damage included: water damaged roofing, siding, sheathing & trim requiring replacement due to exposure; defective installation of electrical and cable TV underground conduit & wiring; stairs installed with code violations, life safety hazards, and defects; failure to install all windowsills and trim, kitchen countertops, backsplash, gas fireplace, a sunroom door, and laundry room doors in accordance with the architectural plans; installation of broken window hardware and window screens; and installation of defective plumbing which resulted in water damage to the garage. (Am. Compl., ECF No. 10, at ¶ 17; Second Am. Compl., ECF No. 21, at ¶ 23).

Policy." (*Id.* at ¶ 21).

Regarding the Assignment, Plaintiff maintains that it became effective on December 1, 2022, as the project was not completed by that date. (*Id.* at ¶¶ 25-30). According to Plaintiff, the damages that occurred over the duration of the project fell within the ambit of the Policy and the valid Assignment. (*Id.* at ¶¶ 25-30).

Turning to the language of the Policy itself, Plaintiff notes that Defendant expressly insured against any "occurrence" that resulted in "property damage" to the House. (*Id.* at ¶ 33). The Policy provides that Defendant "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." (*Id.*, Ex. A, at 16). Further, the "insurance applies to . . . 'property damage' only if . . . the . . . 'property damage' is caused by an 'occurrence' . . . [and] occurs during the policy period." (*Id.*). An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*, Ex. A, at 30). "Property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property." (*Id.*). "All such loss of use shall be deemed to occur at the time of the physical injury [or occurrence] that caused it." (*Id.*). The Policy also expressly notes that the "rights and duties under this Policy may not be transferred without [Defendant's] written consent except in the case of death of an individual Named Insured." (*Id.*, Ex. A, at 36). The Policy also contains a "Prior Injury or Damage Exclusion" which provides:

> This insurance does not apply to . . . "property damage" . . . which begins or takes place before the inception date of this Policy . . . regardless of whether or not such . . . "property damage" . . . is known to any insured. This exclusion shall apply even though the nature and extent of such damage or injury may change and even though the damage or injury may be continuous, progressive, cumulative, changing or evolving, and even though the "occurrence" causing such . . . "property damage", . . . may be or may involve a continuous or repeated exposure to substantially the same general harm or condition.

6

(*Id.*, Ex. A, at 66-67).

## II.    DISCUSSION

In its First Motion to Dismiss, Defendant argues: (1) Plaintiff does not have standing to enforce the terms of the Policy against it; and (2) even if Plaintiff had standing, the events leading to the damage complained of do not trigger coverage under the terms of the Policy. (Def.'s Mot. Dismiss Am. Compl, ECF No. 18-2, at 10-15).  In its Motion to Strike or Dismiss the Second Amended Complaint, Defendant reiterates both of these arguments, and further argues that the Court should strike the Second Amended Complaint because Plaintiff failed to obtain Defendant's consent or the Court's leave before filing it.  (Def.'s Mot. to Strike or Dismiss Second Am. Compl., ECF No. 22-2, at 10, 13-14, 19).  For the reasons that follow, the Court grants Defendant's First Motion to Dismiss and Motion to Strike.

### A.    The Motions to Dismiss

#### 1.    Legal Standard

The Court may dismiss a complaint for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Rather than require detailed pleadings, the Federal Rules of Civil Procedure demand only a short and plain statement of the claim showing that the pleader is entitled to relief.  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  In determining whether a claim is plausible, the Court must "draw on its judicial experience and common sense."  *Id.* at 786-87 (quoting *Iqbal*, 556 U.S. at

679).  First, the Court must identify the elements needed to set forth a particular claim.  *See id.* at 787.  Second, the Court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth.  *See id.*  Third, with respect to well-pleaded factual allegations, the Court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief."  *Id.*  (quoting *Iqbal*, 556 U.S. at 679).  The Court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them."  *Id.* at 790 (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)).

## 2.    The Parties' Arguments[6]

Defendant first argues that Plaintiff lacks standing to enforce the terms of the Policy because the Assignment of RPM's rights was not valid under the terms of the Policy.  (Def.'s Mot. Dismiss Am. Compl., ECF No. 18-2, at 10-15).

Defendant notes that in order to make out a breach of contract claim under Pennsylvania law, a plaintiff must allege: "(1) the existence of a contract, including its essential terms[;] (2) a breach of duty imposed by the contract[;] and (3) resultant damages."  (*Id.* at 10-11 (quoting *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. 2004))).  Defendant maintains that "[i]t is well-settled that under Pennsylvania law, an injured party has no right to directly sue the insurer of an alleged tortfeasor unless a provision of the policy or a statute create such a right."  *Id.* at 11 (quoting *Apalucci v. Agora Syndicate, Inc.*, 145 F.3d 630, 632 (3d Cir. 1998)).  Therefore, because Plaintiff was not a party to the Policy, there is no contractual privity between

---

[6]  Though Plaintiff did not respond to Defendant's Initial Motion to Dismiss, Plaintiff's subsequent arguments contained in his Memorandum in Opposition to the Second Motion to Dismiss are responsive to the issues raised by Defendant.  Further, it is clear from the briefing submitted by both parties that the issues raised are properly teed up for this Court to address.  Therefore, I note the arguments here that Plaintiff advances in his Opposition regarding his standing to bring the breach of contract claim and whether coverage was triggered by the events complained of.

Plaintiff and Defendant and no contract exists that Plaintiff can enforce against it.  (*Id.* at 11 (citing *Hudock v. Donegal Mutual Ins. Co.*, 264 A.2d 668, 672 (Pa. 1970) (under Pennsylvania law, contractual privity exists between the insurer and the insured; there is no privity between a related party and the insured in the absence of a separate contract))).  Moreover, to the extent that Plaintiff relies upon the Assignment to establish privity, Defendant contends that "the transfer of rights was invalid because the [] Policy prohibits assignment [] without [Defendant's] consent, and the purported assignment predated both the inception of the [] Policy in 2024 and any potentially covered loss under the Policy."  (*Id.* at 12; *see also Seneca Ins. Co. v. Lexington & Concord Search & Abstract, LLC*, 484 F. Supp. 2d 374, 377 (E.D. Pa. 2007) (under Pennsylvania law, anti-assignment clauses in insurance policies are enforceable to invalidate an assignment of rights that predates a covered loss)).

Further, though Defendant acknowledges that the Pennsylvania Insurance Insolvency Act (the "Insolvency Act"), 40 Pa. Stat. Ann. § 117, "permits an injured party to bring a direct action against a tortfeasor's insurer to collect on a judgment under specific, limited circumstances," it maintains that "Plaintiff did not bring this action under the Insolvency Act and otherwise failed to allege facts to satisfy such limited circumstances."  (*Id.* at 14).

Next, Defendant argues that even if Plaintiff had standing to enforce the Policy, Plaintiff's breach of contract claim fails because the damage caused by the alleged defective construction work performed by RPM and its subcontractors does not constitute an "occurrence" under the Policy.  (*Id.* at 16).  In making this argument, Defendant first notes that under Pennsylvania law, the contractual rights of a purported assignee cannot exceed those of the assignor.  (*Id.* (citing *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001))).  It then contends that RPM would not be entitled to coverage for the events complained of by Plaintiff, as the Policy provides that Defendant is obligated to pay for

"property damage" only if the damage is caused by an "occurrence."  (*Id.*).  The Policy defines

an "occurrence" as an "accident, including continuous or repeated exposure to substantially the

same general harmful conditions," and Pennsylvania courts have held that faulty workmanship

does not constitute an "accident" under the meaning of an "occurrence."  (*Id.*; *see also Kvaerner*

*Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888 (Pa. 2006)

(hereinafter "*Kvaerner*"); *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co.*, 941 A.2d 706

(Pa. Super. 2007)).  Moreover, Defendant notes that Pennsylvania courts have held that weather-

related damages stemming from faulty workmanship also do not meet the definition of

"occurrence."  (*Id.* at 17 (citing *Millers Capital Ins. Co.*, 941 A.2d at 713 ("[N]atural and

foreseeable acts, such as rainfall, which tend to exacerbate the damage, effect, or consequences

caused *ab initio* by faulty workmanship also cannot be considered sufficiently fortuitous to

constitute an 'occurrence' or 'accident' for the purposes of an occurrence based CGL policy.");

*see also Specialty Surfaces Int'l, Inc. v. Continental Cas. Co.*, 609 F.3d 223, 239 (3d Cir.

2010))).  Defendant clarifies that this rule applies to the faulty workmanship of both the insured

and the insured's subcontractors.  (*Id.* at 18-19 (citing *Millers Capital Ins. Co.*, 941 A.2d at

715)).

Finally, Defendant argues that the Policy's "Prior Injury or Damage" clause excludes

coverage for property damage that "begins or takes place before the inception date of the

Policy . . . regardless of whether or not such . . . 'property damage' is known to any insured."

(*Id.* at 19).  Because all the damages Plaintiff complains of began prior to February 1, 2024, the

inception date of the Policy, the exclusion clause forecloses the possibility of any coverage.  (*Id.*

at 20-21).

Plaintiff responds that he adequately pled facts that give rise to a breach of contract claim

under Pennsylvania law.  First, regarding his standing to enforce the terms of the Policy, Plaintiff

argues that Defendant misunderstands the relevant "timing and nature" of the Assignment.  (Pl.'s Mem. Opp'n, ECF No. 23, at 4).  Plaintiff maintains that the Assignment occurred on December 1, 2022, *after* "the underlying damage and liability arose."  (*Id.* at 4-5).  Specifically, Plaintiff states that "the [A]ssignment was contingent on and triggered by RPM's failure to complete construction by December 1, 2022."  (*Id.* at 5).  Because RPM thereafter possessed a right to proceed under the Policy with a "chose in action," that right was "freely assignable."  (*Id.* (citing *Egger v. Gulf Ins. Co.*, 903 A.2d 1219, 1223-24 (Pa. 2006))).  In addition, Plaintiff argues that his status as a judgment creditor establishes standing.[7]  (*Id.* at 5-6 (citing *Brown v. Candelora*, 708 A.2d 104, 107-08 (Pa. Super. 1998))).

Regarding whether coverage under the Policy was triggered by the events complained of, Plaintiff argues that "unforeseen, unintended events causing damage to property—especially water intrusion or similar consequential harm—can indeed qualify as an 'occurrence.'"  (*Id.* at 6 (citing *Specialty Surfaces Int'l, Inc.*, 609 F.3d at 239)).  Plaintiff contends that his allegations of the "fortuitous interplay of the incomplete or defective structure with intervening weather exposure and, at one point, a plumbing failure in the master bathroom . . . [were] sufficient at the pleading stage" to withstand Defendant's motions to dismiss.  (*Id.* at 6-7).  Specifically, Plaintiff maintains that the exposure of the partially constructed House to the elements, as well as the plumbing failure that occurred in the master bathroom, were both sufficiently "distinct from mere poor workmanship" to merit coverage under Pennsylvania law.  (*Id.* at 7).  He argues that the question of whether the property damage was "sufficiently 'accidental'" is factual in nature and thus not appropriate for the Court to decide at this stage of the proceedings.  (*Id.* (citing *Specialty Surfaces Int'l, Inc.*, 609 F.3d at 238-39)).

---

[7]  Plaintiff does not address the significance of his failure to assert a separate claim under the Insolvency Act.

In addition, Plaintiff argues that his interpretation of the Policy is confirmed by the "Your Work" exclusion clause. (*Id.*). He notes that that clause bars coverage related to the insured's own defective workmanship but carves out an exception to the exclusion if the damage was caused by the faulty workmanship of a subcontractor. (*Id.* at 7-8). Plaintiff cites to *Millers Capital Ins. Co.* for the proposition that "Pennsylvania courts and the Third Circuit interpret the subcontractor exception as a recognition by insurers that subcontractor-caused defects may indeed be covered if they result in unexpected, accidental damage." (*Id.* at 8 (citing 941 A.2d at 713)). Again, Plaintiff maintains that the question of whether the alleged faulty workmanship of the various subcontractors here resulted in unexpected, accidental damages within the ambit of the Policy is factual in nature, and therefore should not be resolved by the Court at this stage of the proceedings. (*Id.*).

Lastly, Plaintiff argues that the question of whether the "Prior Injury or Damage" exclusion clause forecloses coverage here is also factual. (*Id.*). Plaintiff notes that although much of the damage complained of occurred before the effective date of the Policy, he alleged that "some property damage occurred or at least continued into the policy period." (*Id.*). He highlights the plumbing leak in the master bathroom, which he alleges occurred in or around February 2024. (*Id.*). According to Plaintiff, "[c]ourts have routinely recognized that whether and when property damage 'commenced' is a fact-intensive inquiry that cannot be decided at the motion-to-dismiss stage." (*Id.*).

### 3.    Analysis

#### a.    Standing

Plaintiff does not have standing pursuant to the Assignment to assert his breach of contract claim because the purported assignment was invalid under the terms of the Policy. Both Parties agree that under Pennsylvania law, an assignment of rights under an insurance contract is

permissible notwithstanding the existence of a non-assignment clause in the insurance policy, so

long as the assignment occurs *post-loss*.  *See Egger*, 903 A.2d at 1223 ("Pennsylvania law

'allows a post-los[s] assignment in spite of a non-assignment clause because a post-loss

assignment cannot increase the risk to the insurer associated with an undesirable assignee, as the

insurer's payment obligation is already "fixed.""").  Plaintiff alleges that the Assignment became

effective on December 1, 2022, after RPM failed to complete construction of the House by that

date.  (Am. Compl., ECF No. 10, at ¶ 13).  Therefore, the Assignment could only be valid to

cover losses that occurred prior to December 1, 2022.  However, by its own terms the Policy

covers only loss that occurred within the effective dates of February 1, 2024, to February 1,

2025.  *See Kvaerner*, 908 A.2d at 892 n.1 ("An 'occurrence' policy protects the policyholder

from liability for any act done *while the policy is in effect*.") (emphasis added) (quoting

*Consulting Eng'rs Inc., v. Ins. Co. of North America*, 710 A.2d 82, 85 (Pa. Super. 1998)).

Therefore, the Assignment occurred prior to any loss covered by the Policy, and was invalid

pursuant to the Policy's anti-assignment clause.[8]

### b.    Coverage

I further agree with Defendant that even if Plaintiff had standing to bring a breach of

contract claim under the Policy, any such claim fails as coverage was not triggered by the events

---

[8] As noted above, though Plaintiff did not expressly invoke the Insolvency Act in any of his complaints, the parties allude to it in their briefs as another possible avenue for Plaintiff to acquire standing.  In order to proceed under the Act, a prospective plaintiff must show: (1) the insolvency of the insured; (2) the occurrence of an accident or other covered event; (3) that the insured is liable for the accident; (4) that a judgment has been entered against the insured in favor of the plaintiff; (5) that the plaintiff has unsuccessfully sought to execute the judgment against the insured; and (6) that the insurance company is a liability insurer for the insolvent insured.  *Kollar v. Miller*, 176 F.3d 175, 181 (3d Cir. 1999).  As laid out in detail below, the events complained of do not constitute an "occurrence" under the Policy thereby triggering coverage.  Therefore, any claim under the Insolvency Act would fail for the same reasons explained below, as the faulty workmanship and weather-related damages were not covered events under the terms of the Policy.

Plaintiff complains of.

The Policy obligates Defendant to pay for property damage only if those damages were caused by an "occurrence." (Am. Compl., Ex. A, ECF No. 10, at 16). Plaintiff's breach of contract claim is predicated upon the faulty workmanship and delay of RPM and RPM's subcontractors. (*See id.* at ¶¶ 14-21; Second Am. Compl., ECF No. 21, at ¶¶ 14-18). Plaintiff alleges that these factors, in combination with prolonged exposure to weather, resulted in property damage that was "unforeseen," "unintended," "accidental," and "unexpected." (Am. Compl., ECF No. 10, at ¶¶ 18-21; Second Am. Compl., ECF No. 21, at ¶¶ 24-27; Pl.'s Mem. Opp'n, ECF No. 23, at 6-7 ("[The] damage was caused not merely by subpar work but by the fortuitous interplay of the incomplete or defective structure with intervening weather exposure and, at one point, a plumbing failure in the master bathroom.")). Simply put, Pennsylvania courts have roundly rejected coverage under these circumstances.

The Supreme Court of Pennsylvania undertook a similar analysis in *Kvaerner*, holding that faulty workmanship does not trigger coverage under CGL policies such as the one at issue here. 908 A.2d at 899. The dispute in *Kvaerner* stemmed from the faulty workmanship of Kvaerner Metals Division of Kvaerner U.S., Inc. ("Kvaerner"), who contracted to build a coke oven battery for Bethlehem Steel Corporation ("Bethlehem"). *Id.* at 890-91. Though Kvaerner built the battery for Bethlehem, the battery quickly deteriorated due to Kvaerner's faulty workmanship. *Id.* at 891. Bethlehem brought a breach of contract claim against Kvaerner, after which Kvaerner sought indemnification from its insurer, National Union Fire Insurance Co., based on a CGL policy in effect at the time. *Id.* at 891-92. The CGL policy at issue covered "property damage" resulting from an "occurrence," and defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same or general harmful conditions." *Id.* at 897. The *Kvaerner* court noted that because an "occurrence" was defined as

14

an "accident," it was necessary "to examine whether the damage that [was] the impetus of [the]

suit was caused by an accident." *Id.* After reviewing the dictionary definition[9] of "accident" as

well as the holdings of several relevant cases, the *Kvaerner* court noted that "[t]he key term in

the ordinary definition of 'accident' is 'unexpected[,]' [which] implies a degree of fortuity that is

not present in a claim for faulty workmanship." *Id.* at 897-98. Ultimately, the *Kvaerner* court

held that "the definition of 'accident' required to establish an 'occurrence' under [CGL] policies

cannot be satisfied by claims based upon faulty workmanship." *Id.* at 899. The court reasoned:

> Such claims simply do not present the degree of fortuity
> contemplated by the ordinary definition of "accident" or its
> common judicial construction in this context. To hold otherwise
> would be to convert a policy for insurance into a performance
> bond. We are unwilling to do so, especially since such protections
> are already readily available for the protection of contractors.

*Id.*

Plaintiff attempts to distinguish the instant case from *Kvaerner* by claiming that because

the damages complained of here resulted in part from exposure to weather, the damage to the

property was an accidental, unforeseen, and unintended event which constituted an "occurrence"

under the Policy. (*See* Am Compl., ECF No. 10, at ¶¶ 14-21, 33-35; Second Am. Compl., ECF

No. 21, at ¶¶ 14-18, 39-42; Pl.'s Mem. Opp'n, ECF No. 23, at 7 (arguing that Plaintiff's

allegations concerning the House's exposure to weather and the plumbing failure that occurred in

the master bathroom were "distinct from mere poor workmanship")). However, this argument

has been rejected by prior courts. *See Millers Capital Ins. Co.*, 941 A.2d at 713 ("[N]atural and

foreseeable acts, such as rainfall, which tend to exacerbate the damage, effect, or consequences

caused *ab initio* by faulty workmanship also cannot be considered sufficiently fortuitous to

constitute an 'occurrence' or 'accident' for the purposes of an occurrence-based CGL policy.");

---

[9] The *Kvaerner* court relied upon the definition contained in Webster's II, *New College Dictionary* 6 (2001). 908 A.2d at 897-98.

*Specialty Surfaces Int'l Inc.*, 609 F.3d at 239 (holding that water damage stemming from a defectively constructed drainage system was not an "occurrence"); *Main St. Am. Assurance Co. v. Connolly Contractors, Inc.*, 587 F. Supp. 3d 256, 273 (E.D. Pa. 2022) ("[I]t is reasonably foreseeable that Defendants' faulty installation of stucco and other items as part of the [construction p]roject would result in damage to the homes, such as moisture penetration and further water damage."). As noted in *Millers Capital Ins. Co.*, "the weight of common sense collapses the distinction [Plaintiff] attempts to create" regarding the unexpected nature of exposure to weather. 941 A.2d at 713.

Finally, Plaintiff argues that the subcontractor exception to the "Your Work" exclusion clause supports his interpretation of the language of the Policy.[10] (Pl.'s Mem. Opp'n, ECF No. 23, at 7-8). He highlights that although the "Your Work" exclusion clause bars coverage for any occurrence stemming from RPM's defective workmanship, that exclusion expressly does not apply if the damaged work was performed by a subcontractor, as alleged here. (*Id.* at 8 (citing Am. Compl., ECF No. 10, at 20; Second Am. Compl., ECF No. 21, at ¶ 19)). Again, this very

---

[10] It is unclear from Plaintiff's brief whether he relies upon the "Your Work" exclusion clause simply as an interpretive aid, or whether he contends that the language itself provides an affirmative grant of coverage. (*Compare* Pl.'s Mem. Opp'n, ECF No. 23, at 7 ("[Defendant's] argument that the 'subcontractor exception' cannot create coverage fails for the simple reason that coverage is independently plausibly alleged via an 'occurrence.'"), *with id.* at 8 ("Accordingly, the Second Amended Complaint adequately pleads facts indicating that the subcontractor exception may render coverage available.")). To the extent that Plaintiff argues that the subcontractor exception provides an affirmative grant of coverage, exclusions (and any exceptions thereto) do not broaden coverage afforded under an insurance policy and may not be relied upon to create coverage. *See Young v. U.S. Fid. & Guar. Co.*, No. 86-6832, 1987 WL 14846, at *3 (E.D. Pa. July 22, 1987) ("Exclusion clauses do not grant coverage; exclusions limit the scope of coverage granted in the insuring agreement.") (citation omitted); *Great Northern Ins. Co. v. Greenwich Ins. Co.*, No. 05-635, 2008 WL 2048354, at *3 (W.D. Pa. May 12, 2008) ("[A]n exception to an exclusion cannot create coverage otherwise unavailable under the provisions of an insurance policy."); *Main St. Am. Assurance Co. v. Howard Lynch Plastering, Inc.*, 585 F. Supp. 3d 737, 746 (E.D. Pa. 2022) (the party seeking coverage "must first show a covered 'occurrence' before [courts] may consider whether exclusions and their exceptions apply").

argument has been rejected by prior courts.

The Superior Court of Pennsylvania reasoned in *Millers Capital Ins. Co.* that were it to accept the argument now advanced by Plaintiff, it would "render the definition of 'occurrence' mere surplusage in every instance where a plaintiff sues a contractor for faulty work performed by a subcontractor." 941 A.2d at 715. Therefore, the court held that regardless of whether the faulty workmanship or delay was attributable to the insured or the insured's subcontractors, claims predicated on faulty workmanship cannot be considered "occurrences" for purposes of an occurrence-based CGL policy "as a matter of plain language and judicial construction." *Id.*; *see also State Farm Fire & Cas. Co. v. Moreco Constr., Inc.*, 171 F. Supp. 3d 373, 383 (E.D. Pa. 2016) (finding that a subcontractor's failure to act, and the insured's failure to supervise, are not fortuities within the meaning of a CGL policy); *Northridge Vill., LP v. Travelers Indem. Co. of Connecticut*, No. 15-1947, 2017 WL 3776621, at *11 n.9 (E.D. Pa. Aug. 31, 2017) ("[Plaintiffs] also cite to cases decided in other jurisdictions for the proposition that faulty workmanship performed by a subcontractor can constitute an 'occurrence.' These cases are not relevant to the motion before me because, as a court sitting in diversity, I am bound to follow Pennsylvania state law. Thus, my decision must be guided by *Kvaerner* and its progeny.") (citations omitted); *Zurich Am. Ins. Co. v. R.M. Shoemaker Co.*, 519 Fed. App'x. 90, 93 (3d Cir. 2013) (faulty workmanship by a subcontractor does not constitute an "occurrence").

Plaintiff may not recover under the Policy as he has not alleged that an "occurrence"[11]

---

[11] To the extent that Plaintiff relies on his express allegations throughout his three complaints that the damage to the House was sufficiently "unforeseen," "unintended," "accidental," and "unexpected" so as to constitute an "occurrence" under the Policy, these assertions are mere legal conclusions not entitled to any weight. *See Kelley*, 2019 WL 2425135, at *2.

under its terms took place.[12]  Therefore, the Motion to Dismiss the Amended Complaint is

granted.

**B.      The Motion to Strike**

**1.      Legal Standard**

Rule 15(a)(1) provides that a Plaintiff may amend his complaint once as a matter of

course.  Rule 15(a)(2) provides that after the first amendment, a "party may [further] amend [his]

pleading only with the opposing party's written consent or the court's leave.  The court should

freely give leave when justice so requires."  Rule 12(f) provides that "[t]he court may strike from

a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter."  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation,

and avoid unnecessary forays into immaterial matters."  *Abrams v. eResearch Tech., Inc.*, 703 F.

Supp. 3d 593, 600 (E.D. Pa. 2023) (quoting *Snider for Goldhirsh v. State Farm Fire & Cas. Co.*,

644 F. Supp. 3d 141, 147 (E.D. Pa. 2022)).  Courts within the Third Circuit may utilize Rule

12(f) to strike unauthorized amendments to pleadings.  *Abrams.*, 703 F. Supp. 3d at 600

(citations omitted).  "Where Plaintiff[] fail[s] to request a leave of court to file an amended

complaint as required under Rule 15(a) of the Federal Rules of Civil Procedure, '*[i]t is a nullity,

and the court will not consider it.*'"  *Talanca v. Borough of Ashley*, No. 3:18-2184, 2021 WL

10396003, at *2 (M.D. Pa. Sept. 10, 2021) (quoting *Colbert v. City of Philadelphia*, 931 F. Supp.

---

[12]  Defendant also argues that the "Prior Injury or Damage" exclusion clause forecloses
coverage.  That clause excludes property damage that "begins or takes place before the inception
date of this Policy . . . regardless of whether or not such . . . 'property damage' . . . is known to
any insured."  (Am. Compl., Ex. A, ECF No. 18, at 66-67).  Moreover, the exclusion applies
"even though the nature and extent of such damage or injury may change and even though the
damage or injury may be continuous, progressive, cumulative, changing or evolving, and even
though the 'occurrence' causing such . . . 'property damage,' . . . may be or may involve a
continuous or repeated exposure to substantially the same general harm or condition."  (*Id.*).
Because I find that Plaintiff lacks standing and the alleged events do not constitute an
"occurrence" under the Policy, I do not address Defendant's additional argument pertaining to
the "Prior Injury or Damage" clause.

389, 393 (E.D. Pa. 1996)); *see also Readmond v. Matsushita Elec. Corp. of Am.*, 355 F. Supp.

1073, 1080 (E.D. Pa. 1972) (striking new allegations added without leave of Court).

### 2.    The Parties' Arguments

Defendant argues that Plaintiff's Second Amended Complaint should be stricken as

Plaintiff did not obtain Defendant's consent or the Court's leave to file it, pursuant to Federal

Rules of Civil Procedure 12(f) and 15(a)(2).  (Def.'s Mot. to Strike or Dismiss Second Am.

Compl., ECF No. 22-2, at 10-12).  Though Plaintiff was entitled to file one amended pleading as

a matter of course pursuant to Rule 12(a)(1)(B), Defendant contends that any subsequent

amendments required either Defendant's consent or the Court's leave—neither of which were

obtained here.  (*Id.* (citing Fed. R. Civ. P. 15(a)(2))).  Additionally, Defendant argues that the

proposed amendment is futile as the additional allegations contained in the Second Amended

Complaint do not remedy the fatal defects inherent in the initial Amended Complaint.  (*Id.* at 12

(citing *Creighton Prop. Holdings, LLC v. Nautilus Ins. Co.*, No. 21-280, 2024 WL 54690, at *9

(W.D. Pa. Jan. 4, 2024))).  In doing so, Defendant notes that the additions to the Second

Amended Complaint are either legal conclusions or not material to the disposition of the case.

(*Id.* at 12; Def.'s Reply, ECF No. 24, at 5 n.2).

In response, Plaintiff does not address the requirements of Rule 15(a)(2) that Defendant

raises.  Instead, Plaintiff contends that: he filed the Second Amended Complaint in "good faith";

the amendment merely "refined" the factual allegations contained in the Amended Complaint

regarding when the assignment became effective; the Second Amended Complaint states a

facially plausible claim for coverage under Pennsylvania law; courts generally disfavor striking

pleadings under Rule 12(f) absent prejudice or clear procedural violations; no prejudice exists

here; and therefore the Court should deny Defendant's Motion to Strike.  (Pl.'s Mem. Opp'n,

ECF No. 23, at 1-4).  For the reasons that follow, I agree with Defendant that Plaintiff's

proposed Second Amended Complaint should be stricken for failure to comply with Rule 15(a)(2).

###    3.    Analysis

There is no dispute that Plaintiff did not obtain the consent of Defendant or leave of this Court to file his Second Amended Complaint.  Therefore, Plaintiff has failed to satisfy the requirements of Rule 15(a)(2).  Further, because the allegations contained in Plaintiff's Second Amended Complaint do not cure the deficiencies of the Amended Complaint noted above, the Second Amended Complaint is futile.  *Cf. Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.") (quoting *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (hereinafter "*In re Burlington*")).

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  *Id.* (citing *In re Burlington*, 114 F.3d at 1434).  "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *Id.* (citing *In re Burlington*, 114 F.3d at 1434).  "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency."  *Id.*

Here, the Second Amended Complaint does not contain any new allegations that would cure the defects highlighted above.  Instead, Plaintiff notes that the Second Amended Complaint simply clarifies the timeline of the alleged events, but still maintains that the breach of contract claim is predicated on the faulty workmanship of RPM and its subcontractors.  (Second Am. Compl., ECF No. 21, at ¶ 9; Pl.'s Mem. Opp'n, ECF No. 23, at 1-4).  For the reasons stated above, any claim predicated on faulty workmanship fails under the Policy's provisions and Pennsylvania law.  Therefore, Plaintiff's proposed Second Amended Complaint would also fail,

as it too would be dismissed under Rule 12(b)(6).

Plaintiff attempts to avoid this conclusion by pointing to the assertions in his Second Amended Complaint that the events leading to the damage of the Property constituted "occurrences" under the Policy.  However, these assertions are mere legal conclusions not entitled to any weight.  *Leyman v. Econ. Fire & Cas. Co.*, No. 23-3458, 2023 WL 8188444, at *2-3 (E.D. Pa. Nov. 27, 2023) (denying motion for leave to file previously stricken second amended complaint where the only additional allegations were legal conclusions).  Ultimately, based on the gravamen of Plaintiff's complaints no amendment to Plaintiff's pleadings could allege a claim for which relief could be granted, and thus further amendment is futile.  *Creighton Prop. Holdings, LLC.*, 2024 WL 54690, at *9 ("[N]o amendment to the pleading can change the natural, plain, ordinary meaning of the [insurance policy] language used therein.").  Therefore, the Motion to Strike is granted.


## III.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Dismiss the Amended Complaint and Motion to Strike the Second Amended Complaint are **GRANTED**.


BY THE COURT:


 _/s/ Lynne A. Sitarski_____
LYNNE A. SITARSKI
United States Magistrate Judge

21